**STEWART LEE KARLIN LAW GROUP, P.C.**
**DANIEL DUGAN, ESQ.**
111 John Street, 22nd Floor
New York, New York 10038
(212) 792-9670/Office
(844)636-1021/Fax
<dan@stewartkarlin.com>

MEMBER OF THE BAR                                        Concentrating in Employment, Insurance and
NEW JERSEY & NEW YORK                           Education Law and Commercial Litigation

March 14, 2024

<u>Via Federal Express</u>
Christine A. Soto, General Counsel
Essex County College
303 University Ave.
Newark, NJ 07102


Re:   Mr. Alandre Gonel
      Regarding the NRS111 Grade Appeal.


Dear Ms. Soto:

As you may recall, we were retained to represent Mr. Gonel, in connection with his appeal of the NRS111 grade in the LPN to RN bridge program.

As you may aware, after holding my client in the dark for months, instead of taking into account his complaints, and recalculating the clear mathematical error made in calculating his final grade, on or about March 24, 2023, in a one-paragraph letter simply stated that after a careful examination, the committee had voted unanimously not to change his grade with no rationale in the letter explaining why. As a result, the school expelled him from the entire nursing program.

Nevertheless, there are several points that Mr. Gonel would like to address and would appreciate a response from the following members of the school:

Professor Colin Archer
Dr. Alvin Williams
Dr. Gennevieve Danville
Dr. Eunice Kamunge
Dr. Keith Kirkland
Mr. Mohamed Seddiki

On Wednesday, March 23, 2022, at approximately 8:35-9:00 p.m., two days after a verbal argument between my client and Dr. Gale Gage, Professor Colin Archer, whom my client has never met before, and has never had as a professor, came and ask my client whether he could speak to him

Christine A. Soto, General Counsel
Essex County College
March 14, 2024
-Page 2-

privately at the end of his very first clinical class with my client. When my client came to him, he asked my client, **"What's going on with you and Dr. Gage?**"

When my client asked Professor Colin Archer what Dr. Gage said about him? He replied, **"She didn't say anything bad."**

The following day, at approximately 10 a.m., in room 2111, in a private conversation with my client, Professor Archer made the following statement: "**Mr. Gonel, it's not that I undervalue LPN nurses, but the RN program is a big step for you, if you want to pass the course, shut your mouth.**

Although my client heeded Professor Archer's advice, and held his tongue, the school dismissed him from the RN program, as you are well aware.

**Would Professor Archer state that my client's behavior was poor while in school?**

After the school miscalculated my client's final grade, and failed him for approximately 2 points, my client went and implored Dr. Alvin Williams, the Executive Dean of Faculty and Academic Affairs, to grant him the 2 points that he needed, in order to avoid repeating NRS111 course. In a sarcastic smile, Dean Williams replied to my client: **"How are you going to take care of my grandmother, if I give you the 2 points you asked for?"** then suggested my client to file a grade appeal.

Making such a comment as the Executive Dean could be viewed by my client or other students to be offensive and humiliating and considered discriminatory.

**Was Dr. Alvin Williams' statement to my client made out of "concern" about the kind of nurses the school is preparing and sending into the workplace?**

After filing, and repeatedly requesting that the grade appeal meeting be held in person instead of the Zoom as the only option meeting granted to my client, on Monday, August 22, 2022, at 3:59 p.m., Dr. Gage Gale, emailed Dr. Alvin Williams, the Executive Dean of Faculty & Academic Affairs to inform him that she has terminated the grade appeal process because my client did not attend the ZOOM meeting.

After Dr. Gage, arbitrarily, with no regard for Essex County College, College Regulation REG 6-9 STUDENT GRADE APPEAL, cancelled the grade appeal process, my client was forced to hire a private attorney despite his limited resources, as there is nothing in the school handbook that states that student's appeal meetings must be held via zoom, especially if a specific request is made for the meeting to be held in person.

Following my interventions as Mr. Gonel's attorney, on or about September 26, 2022, the school was compelled to reinstate my client's grade appeal for a second time.

Christine A. Soto, General Counsel
Essex County College
March 14, 2024
-Page 3-

After reinstating the grade appeal process, my client was directed to appear in various meetings which I, the lawyer, was not allowed to attend.

During these meetings, instead of taking into account my client's complaints, and recalculating the clear mathematical error made by the two core Professor, Natalee White-Smith and Jennifer Chapman in calculating my client's grade, on Monday, October 31, at 4:55 p.m., Dr. Gale Gage emailed my client and stated that the Divisional Grade Appeal Committee met and recommended that my client be given the opportunity to amend his grade by retaking the final exam. A decision that my client rejected, due to the fact that the school refused to take into account his complaints and refused to recalculate the clear mathematical error made by the two core Professors in calculating his final grade.

As one of the members of the Divisional Grade Appeal Committee Dr. Danville was well aware of my client's decision.

However, after the school, on Friday March 24, 2023, emailed my client a one paragraph letter, simply stating that after careful review, the committee voted unanimously not to change my client's grade without any justification in the letter explaining why, Dr. Gennevieve Danville, one of the members of the divisional grade appeal committee, as mentioned earlier, made the following statement:

> "It's almost an insult to them, the grievance committee because the school did not acknowledge their decision since the Plaintiff was not at fault." And added: "…So whatever the grievance committee said …. Doesn't it matter?" And continue to say: "if the school knew they wouldn't even listen to the grievance committee, why even bring the matter to them."

Based on the number of syllabi that were given to my client, and presented at the grade appeal meeting, which made it impossible for the two core Professors, Natalee Write-Smith and Jennifer Chapman, and the committee grade appeal to discern the mathematical error made in calculating my client's grade, as a member of the Divisional Grade Appeal Committee, Dr. Danville stated:

> "There is no concrete argument; because the student got one syllabus from Dr., Gage, two syllabi from professor Natalee, and one syllabus from Professor Chapman……Right there that was ground to throw the case out in a court."

After holding my client in the dark for months, the school decided to expel him from the nursing program on Friday, March 24, 2023. Knowing the problems caused by the number of syllabi emailed or handed to him, **would Dr. Danville agree that the school could have had handled this situation differently?**

Christine A. Soto, General Counsel
Essex County College
March 14, 2024
-Page 4-

After the school, arbitrarily, expelled my client from the nursing program, in a private meeting between Dr. Eunice Kamunge, one of the members of the College Wide Grade Appeal, Dr. Gennevieve Danville_ one of the members of the Divisional Grade Appeal Committee, and my client, Dr. Kamunge avowed to Dr. Danville that she was invited or Dr. Alvin Williams, the Executive Dean of Faculty and Academic Affairs, invited her to the college-wide appeals meeting only 20 minutes before the meeting starts. She also stated that she did not know what was going on during the meeting because the attendees were not explicit.

**How did the College Wide Grade Appeal committee or the school justify the final decision not to change my client's grade when members at the meeting did not know what was going on, or the attendees were not explicit, as stated Dr. Kamunge?**

Furthermore, in an attempt to re-count one of four miscalculations made by Professor Natalee Write-Smith and Professor Jennifer Chapman in calculating my client's final score, the school's SGA (Student Government Association) found different results compared to those of teachers during the College Wide Grade Appeal. (See the school's SGA attachment)

During this private meeting, Dr. Danville made the following statement:

> "There is no concrete argument; because the student got one syllabus from Dr, Gage, two syllabi from professor Natalee, and one syllabus from Professor Chapman….Right there that was ground to throw the case out in a court."

**Would Dr. Kamunge agree that the four syllabi given to my client be the cause of all this confusion?**

Step 5 Part C in Essex County College, College Regulation REG 6-9 STUDENT GRADE APPEAL, highlights the deferent members who must be present at the College Wide Grade Appeal Committee meeting.

The College Regulation REG 6-9 STUDENT GRADE APPEAL recommends that one faculty member from each of the academic divisions should be present during that meeting.

However, neither Dr. Keith Kirkland, the Dean of Student Affairs, nor his designee, were among the faculty members who were not present at the college Wide Grade Appeal Committee meeting.

As they say in a campaign trail, every vote counts. **Would Dr. Kirkland agree that his presence or that of someone designated by his office at the meeting could have impacted the school's final decision?**

Prior to the initial grade appeal process, Dr. Alvin Williams, the Executive Dean of Faculty and Academic Affairs, as previously mentioned, aver to my client that **"the school has resources or**

Christine A. Soto, General Counsel
Essex County College
March 14, 2024
-Page 5-

**ways to track the original syllabus sent to students."** This statement was made when my client raised with Dr. Williams the issue of different versions of syllabi being given to him for the same course.

In addition, when my client told Dr. Williams about the additional 3 points that he has earned for reaching level 2 on the ATI proctored exam for mental health, as indicated on one of the syllabi emailed to him, but the two core teachers, Natalee White-Smith and Jennifer Chapman, denied these points, Dean Williams stated: **"Why take an exam or do an assignment if it is for no points?"**

Knowing the issues raised by the number of syllabi emailed or handed to my client, as the Executive Dean and Chief Information Officer (CIO), **was Mr. Mohamed Seddiki able to retrieve the original documents or syllabi sent to my client after the school, particularly Mr. Alvin Williams contacted him regarding this matter?**

Please be further advised that Mr. Gonel is requesting a response from the school to the summary set forth above.

Thank you for your attention to this matter.

Very truly yours,

DANIEL DUGAN