<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALANDRE GONEL,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>ESSEX COUNTY COLLEGE,<br><br>　　　　　　　Defendant. | Civil Action No. 25-950 (SDW) (JSA)<br><br>**OPINION**<br><br>September 3, 2025 |

**WIGENTON**, District Judge.

Before this Court is Defendant Essex County College's ("ECC" or "Defendant") Motion to Dismiss (D.E. 5 ("Motion")) Plaintiff Alandre Gonel's ("Mr. Gonel" or "Plaintiff") Complaint (D.E. 1 ("Compl.")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This Court considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, ECC's Motion is **GRANTED**.

**I.    FACTUAL BACKGROUND**[1]

Plaintiff is a 47-year-old Black male of Haitian descent with a discernible accent. (Compl. ¶ 8.) He enrolled at ECC in order to improve his career prospects, eventually graduating in 2017 with a degree in biology pre-med. (*Id.* ¶ 10.) After working outside his field, Plaintiff returned to ECC, where he completed the LPN program and passed the state licensing exam. (*Id.* ¶¶ 11–14.)

---

[1] The facts in this section are derived from the Complaint and are taken as true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In 2022, Plaintiff entered the College's LPN-to-RN bridge program and completed the first term. (*Id.* ¶ 15.) During his second trimester in the RN program, Plaintiff had a verbal dispute with Dr. Gale Gage, Chair of the Nursing Department. (*Id.* ¶ 16.) He alleges that this disagreement precipitated differential treatment and ultimately his removal from the program. (*Id.* ¶ 17.) Plaintiff points to a subsequent interaction with Professor Colin Archer, who asked about his dispute with Dr. Gage and told him that "if you want to pass the course, shut your mouth." (*Id.* ¶ 20.) Plaintiff interpreted this comment as evidence of bias based on his race, national origin, and gender.

Plaintiff received a final grade of 72.81 in his RNS 111 course, just below the 75-point passing threshold. (*Id.* ¶ 24.) He pursued a grade appeal, asserting both grading errors and procedural irregularities. (*Id.* ¶ 33.) According to Plaintiff, faculty failed to credit points he earned, applied inconsistent or conflicting syllabi, and miscalculated certain scores. (*Id.* ¶¶ 39–58.) He contends that his grade, if properly calculated, should have exceeded the passing mark. (*Id.*) He further alleges that his appeal was mishandled: Dr. Gage cancelled his initial request, he was denied the opportunity for an in-person hearing or representation, and ECC delayed or failed to follow its own procedures. (*Id.* ¶ 34.) The appeal was ultimately denied in March 2023 in a short letter. (*Id.* ¶ 59.) Plaintiff was dismissed from the program, notwithstanding his assertion that he had earned a passing grade. (*Id.* ¶ 61.) He alleges that other faculty members acknowledged irregularities in the process and described the handling of his appeal as unfair. (*Id.*) Plaintiff claims that these events were motivated by discrimination based on his race, national origin, and gender, and that he has suffered harm as a result.

II. **PROCEDURAL HISTORY**

Plaintiff filed the Complaint on February 3, 2025, while represented by counsel. (D.E. 1.)

Defendant moved to dismiss (D.E. 5), and Plaintiff, still represented, filed an opposition brief. (D.E. 10.) Defendant filed its reply on June 9, 2025 (D.E. 11), and Plaintiff's counsel thereafter moved to withdraw (D.E. 13), which the Court granted. (D.E. 16.) Plaintiff now proceeds *pro se*.[2] (D.E. 18.) On August 25, 2025, Plaintiff filed a "supplemental response" without leave from this Court. While under no obligation to do so, this Court has considered this supplemental response in its entirety.

### III. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must conduct a three-step analysis. First, it must "tak[e] note of the elements a plaintiff must plead to state a claim." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Second, the court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Third, the court assumes the veracity of all well-pleaded factual allegations, "constru[es] them in the light most favorable to the plaintiff, and draw[s] all reasonable inferences in the

---

[2] While this Court applies the liberal construction afforded to pro se litigants, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that standard has less force here because the operative pleadings and briefing were attorney-drafted.

plaintiff's favor." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). "If, after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 556).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

## IV.     DISCUSSION

### A. Counts One and Two (Violations of Title VI and Title IX)

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title IX of the Education Amendments of 1972 contains materially similar language, prohibiting exclusion from or discrimination in federally funded educational programs "on the basis of sex." 20 U.S.C. § 1681(a).

The Supreme Court has recognized that Title IX was patterned after Title VI, and courts interpret the two provisions consistently. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696 (1979). Both statutes prohibit only intentional discrimination, meaning that disparate-impact theories are not actionable. *See Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001) (Title VI); *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173 (2005) (Title IX). Intentional discrimination may be proven by either (1) direct evidence of willful discrimination, or (2) a showing of deliberate indifference by

4

defendants to events adverse to the plaintiff. *Williams v. Pennridge Sch. Dist.*, 782 F. App'x 120, 127 (3d Cir. 2019). At the pleading stage, a plaintiff need not establish a full prima facie case under the McDonnell Douglas burden-shifting framework, but must "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

Here, Plaintiff alleges that following a dispute with the Chair of ECC's Nursing Department, a professor told him to "shut your mouth if you want to pass the course." Plaintiff interpreted that comment as reflecting bias based on his being a Black Haitian male with an accent. The Complaint also details Plaintiff's failing grade, his appeal, and what he characterizes as grading errors and procedural irregularities. But the Complaint does not allege that any similarly situated students of a different race, national origin, or sex were treated more favorably, nor does it plead other concrete facts linking the challenged decisions to Plaintiff's protected characteristics. While not wholly necessary, the lack of information about comparators or other factual indicia of bias only serves to emphasize the conclusory nature of the allegations here. While Plaintiff may believe that his dismissal resulted from discriminatory animus, the Complaint offers only conclusory assertions and Plaintiff's subjective interpretations of faculty conduct. For example, throughout the Complaint, Plaintiff alleges behavior on the part of ECC, and then immediately attempts to buttress those allegations with blanket conclusory allegations that the behavior "reflects a bias since Plaintiff is a male Haitian black with a discernible accent." *See* Compl. ¶¶ 27, 32, 36, 50, 60, 74. These bare assertions, without more, do not plausibly allege intentional discrimination under either Title VI or Title IX. This conclusion is reinforced by the judicial deference owed to academic institutions in their grading and disciplinary decisions. The Supreme Court and the Third Circuit have instructed that courts "should show great respect for the faculty's

professional judgment" and may not override academic decisions absent a substantial departure from accepted academic norms. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985); *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986); *Manning v. Temple Univ.*, 157 F. App'x 509, 514 (3d Cir. 2005). While each of the above-cited cases primarily focused on the due process context, Plaintiff's allegations here fall within the sphere of academic judgment and, without factual allegations of discriminatory intent, cannot sustain a Title VI or Title IX claim.

Accordingly, Plaintiff's discrimination claims under Title VI and Title IX are dismissed without prejudice. If Plaintiff chooses to amend, he must plead non-conclusory facts that, if true, would allow a reasonable inference that his race, national origin, or sex played a role in ECC's decisions.

### B. Count Three (Slander)

Plaintiff also asserts a state-law claim for slander. Because this Court exercises federal question jurisdiction over the Title VI and Title IX claims and supplemental jurisdiction over related state-law claims, *see* 28 U.S.C. § 1367, New Jersey law governs the defamation claim. Under New Jersey law, slander requires a plaintiff to allege: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication of that statement to a third party; (3) fault amounting to at least negligence; and (4) damages. *See Feggans v. Billington*, 677 A.2d 771, 775 (N.J. Super. Ct. App. Div. 1996).

New Jersey imposes a one-year statute of limitations on libel and slander claims. N.J.S.A. 2A:14-3. That period begins to run on the date of publication. *Lawrence v. Bauer Publ'g & Printing Ltd.*, 396 A.2d 569, 571 (N.J. 1979). Plaintiff's own allegations place the challenged statements in March 2022. Compl. ¶ 19. This action was not filed until February

6

2025, nearly three years later, well outside the statutory period. Plaintiff attempts in his opposition to invoke equitable tolling, but equitable tolling is generally applied sparingly and is limited to situations where the defendant misled the plaintiff, where extraordinary circumstances prevented timely filing, or where the plaintiff timely filed in the wrong forum. *See Binder v. Price Waterhouse & Co., LLP*, 923 A.2d 293, 298–99 (N.J. Super. Ct. App. Div. 2007). Plaintiff's decision to pursue ECC's internal remedies does not fall into any of the categories, and thus does not implicate equitable tolling.

Even if the claim were timely, the Complaint fails to plead the substantive elements of slander. The only alleged "statement" attributed to a faculty member is Professor Archer's comment to Plaintiff that, "If you want to pass the course, shut your mouth." Compl. ¶ 20. That remark is not defamatory on its face and does not impugn Plaintiff's professional competence, nor is it alleged to have been published to any third party, a necessary element of defamation. Plaintiff also speculates that "defamatory statements must have been made" by Dr. Gage or others, but speculation does not substitute for factual pleading. *See Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986) ("In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication.")

For these reasons, Plaintiff's slander claim is both time-barred and deficient on the merits. Because the limitations period has expired and no tolling applies, amendment would be futile. The slander claim is therefore dismissed with prejudice.

### V.   CONCLUSION

For the reasons set forth above, Defendant's Motion is **GRANTED**. Plaintiff's Title VI and IX claims are **DISMISSED WITHOUT PREJUDICE** and Plaintiff's defamation claim is

8

**DISMISSED WITH PREJUDICE**.  An appropriate order follows.

                                                */s/ Susan D. Wigenton*
                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Jessica S. Allen, U.S.M.J.